## Case No. 12,304.
### SANDS v. DELAFIELD.
[2 Paine, 409.] [1]

Circuit Court, D. New York.    1856.

BANKRUPTCY — AWARD TO ASSIGNEE — WHO ENTITLED TO SUE.

Upon the construction of the following act of congress, viz. [6 Stat. 287]: "Be it enacted. &c., that there be paid after the first day of March, one thousand eight hundred and twenty-three, out of any moneys in the treasury not otherwise appropriated, to Ebenezer Stevens and Austin L. Sands, representatives of Richardson Sands, deceased. to Robert Morris. surviving assignee under the late United States law of bankruptcy, of Comfort Sands, or to whomsoever shall appear to the comptroller of the treasury to be entitled to his share, and to Joshua Sands, the sum of twenty-two thousand nine hundred and seventy-eight dollars, in full satisfaction of their claim upon the United States, under an award of referees in favor of them and others, dated at New York, on the twenty-fifth of October, one thousand seven hundred and eighty-seven, and the contracts therein referred to, one-third part of which sum is to be paid to each of the said Richardson, Comfort and Joshua Sands, or to their legal representatives as above mentioned. Provided, that before such payment each of the said parties shall relinquish to the United States all further claim against them on account of said award, and the several contracts upon which that award was founded."—it was held, that Comfort Sands could not be entitled in his own right to any part of the money mentioned in the act; and semble, as there was nothing to prevent a suit's being maintained in the name of any one who was legally entitled. it was unnecessary to use his name to enforce the rights of others.

Motion to set aside a nonsuit.

The declaration was in assumpsit for money had and received, &c., and to which was pleaded the general issue. At the trial it was admitted on the part of the defendant, that on the 15th of December, 1823, he had received from the treasury of the United States the sum of 7,659 dollars 64 cents, by virtue of a power of attorney from Robert Morris, surviving assignee under the bankrupt law of the United States, of Comfort Sands, the plaintiff. It was also admitted that the defendant had received notice not to pay over or part with the money, as it belonged to the plaintiff and not to his assignees. The plaintiff's discharge under the bankrupt law was also admitted. The plaintiff then offered in evidence an act of congress, of March 3d, 1823 [6 Stat. 287], entitled "An act for the relief of Ebenezer Stevens and others," and which was as follows, viz.: "Be it enacted by the senate and house of representatives of the United States of America, in congress assembled, that there be paid after the first day of March, one thousand eight hundred and twenty-three, out of any moneys in the treasury not otherwise appropriated, to Ebenezer Stevens and Austin L. Sands, representatives of Richardson Sands, deceased. to Robert Morris. surviving assignee under the late United States law of bankruptcy, of Comfort Sands, or to whomsoever shall

1 [Reported by Elijah Paine, Jr., Esq.]

appear to the comptroller of the treasury to be entitled to his share; and to Joshua Sands, the sum of twenty-two thousand nine hundred and seventy-eight dollars, in full satisfaction of their claim upon the United States, under an award of referees in favor of them and others, dated at New York, on the twenty-fifth of October, one thousand seven hundred and eighty-seven, and the contracts therein referred to; one-third part of which sum is to be paid to each of the said Richardson, Comfort and Joshua Sands, or to their legal representatives as above mentioned. Provided, that before such payment, each of the said parties shall relinquish to the United States all further claim against them on account of said award, and the several contracts upon which that award was founded."

The plaintiff then called Joshua Sands as a witness, who testified that he was one of the persons named in the act of congress, to whom the grant by the law of 1823 was made; that Comfort Sands, the plaintiff, was interested one-third in the grant; that Ebenezer Stevens married the widow of Richardson Sands. The act was passed for relief of three persons, Richardson Sands' representatives, Comfort Sands and witness, each one-third. The grant was made by congress for damages sustained under a contract made with Robert Morris, superintendent of finance, in December, 1781. Mr. Morris paid all that was due on the contract in 1783, and the grant was made by congress for damages sustained by the contractors, the three Sands, in consequence of the government not taking the surplus that had been purchased by the contractors. To this evidence the counsel for defendant objected, that congress had decided by the law to give and vest the share of the grant which related to Comfort Sands in and to his assignees; and the court sustained the objection, deciding that such was the construction to be given to the act of congress of March 3, 1823. The plaintiff then offered to prove "that the claim on which the act of congress was founded, grew out of a claim on the government of the United States in 1782, and that the claim was assigned, in 1797, to Nathaniel Prime, after the claim had been submitted to arbitrators appointed by the United States. and after such arbitrators had made an award in 1785 in favor of claimants; that Nathaniel Prime pursued the claim for many years before congress, and procured a law to be passed in 1799 on the subject; that the assignment to Prime was for the benefit of creditors, some of which creditors were not yet paid." The plaintiff also offered to prove the report, made in obedience of the act of congress of March 2, 1799 [6 Stat. 38], entitled "An act for the relief of Comfort Sands and others," of John Steele, the comptroller of the treasury of the United States, bearing date the 19th day of March, 1802, on the grounds, history and merits of the claim; and also the report of Albert Gallatin, secretary of the treasury of the United States, bear-

ing ·date the 29th day of March, 1802, on the same object. These reports cannot be condensed, and are too voluminous to be inserted. The plaintiff's counsel also offered in evidence the papers in bankruptcy of Comfort Sands, to show that this claim was never assigned to his assignees, but was excepted out of the assignment to them on the ground of the assignment to said Nathaniel Prime. The whole of the above evidence offered by the plaintiff was ruled out by the court, and a nonsuit granted.

S. P. Staples and J. Hoyt, for plaintiff.

T. A. Emmett and D. S. Jones, for·defendant.

THOMPSON, Circuit Justice. Upon the trial of this cause, and also on the argument of the motion to set aside the nonsuit, it seemed to be assumed on both sides, that the money granted by the act of congress, passed March 3, 1823 [6 Stat. 287], and for which this action is brought, was a mere gratuitous bounty of the government, and I perhaps yielded too readily to this view of it; and if the law is so to be considered, it must be determined upon the face of the act to whom this bounty was intended to be extended. There would, upon this view of it, be no ground upon which an inquiry could be properly instituted touching any prior claim. The act would be the foundation of the claim, and the rights of parties under it must be determined by the act itself. Upon further consideration, I think this is not the view which ought to be taken of this act; but that it is to be considered as appropriating a sum of money in payment and extinguishment of a claim set up against the government. If it was intended as a mere gratuity, congress would not have left it open to doubt who the object of their bounty was. But the act expressly declares, that the money thereby appropriated shall be in full satisfaction of a claim upon the United States, under an award of referees dated 25th of October, 1787, and the contracts therein referred to; and this claim, it would seem, was not merely colorable, but had been sanctioned by an award of referees. The money was, therefore, to be paid to extinguish a real and substantial claim, to which congress considered the parties at least equitably, if not legally entitled; and before payment of the money was authorized to be made, the parties were required to relinquish to the United States all further claim on account of said award, and the several contracts upon which that award was founded. The act directs the money to be paid to Ebenezer Stevens and Austin L. Sands, representatives of Richardson Sands, deceased, to Robert Morris, surviving assignee under the late United States law of bankruptcy, of Comfort Sands, or to whomsoever shall appear to the comptroller of the treasury to be entitled to his share, and to Joshua Sands. The money now in question is the share of Comfort Sands, and unless he is entitled to it in his own right, the present action, I am inclined to think, cannot be sustained. I am unable to discover any plausible construction of the act which gives the money to him in his own right. It assumes that he has become a bankrupt, and assigned his property; and it seems, also, to imply, that there may be a dispute as to whom his share belongs. But the language of the act necessarily implies that this dispute is between third persons alone, and not between them and Comfort Sands. His right to it is deemed to be extinguished, by his assignment under the bankrupt law, or in some other way. Had he been considered as having any claim to it, the law would probably have directed the money to be paid to him, or to whomsoever should be entitled to his share; and the subsequent part of the act, which directs one-third part of the money appropriated to be paid to each of the said Richardson, Comfort and Joshua Sands, does not alter this construction. His name is here merely mentioned as representing one-third part. The former part of the act had directed the payment in gross, the latter part provides for its distribution in thirds. That such must have been the intention is evident from the circumstance that one-third is also to be paid to Richardson Sands, when, from the former part of the act, he is stated to be dead. His name is therefore mentioned only as designating one share. But this part of the act does not stop with directing the payment of one-third to be made to each of them, but it is to be made to them, or their legal representatives as above mentioned. Who are the legal representatives above mentioned? Ebenezer Stevens, Austin L. Sands and Robert Morris, must be the persons referred to. If the representatives of Richardson Sands only had been intended, the plural "their" could not have been properly used. If this view of the act be correct, Comfort Sands cannot be entitled in his·own right to any part of this money; nor do I see how it can be necessary to use his name, to enforce the rights of others who may set up a claim to it. There is nothing to prevent a suit being maintained in the name of any one who is legally entitled to the money.

Although I am very strongly impressed with the opinion that the present action cannot be sustained, yet I would not be understood as having formed a definitive opinion upon that question. I have thrown out these views of the law, that the attention of the counsel may be more particularly directed to the construction of the act; and as some testimony was offered on the part of the plaintiff, and excluded, which might throw some light upon the real merits of the case, I am inclined to think the ends of justice will be promoted, by setting aside the nonsuit and granting a new trial, with costs to abide the event of the suit.

NOTE. In construing a statute, the intention of the lawgiver, when once ascertained, is

to prevail over the literal sense of the words which are used. Such intention is to be gathered from a consideration of all parts of the statute taken together. This may be presumed according to the necessity of the matter, and of that which is consonant to reason and good discretion. McDermut v. Lorillard, 1 Edw. Ch. 273. When the words of a statute are doubtful, general usage may serve to explain them; but the maxim, "Communis error facit jus," has no application to the usages of particular corporation towns or other places. Currie v. Page, 2 Leigh, 617. In the United States, where the legislative power is limited by written constitutions, a declaratory statute cannot have the legal effect of depriving an individual of a vested right, or of changing the rule of construction as to pre-existing law. Salters v. Tobias, 3 Paige, 338. In the construction of a statute, the whole law is to be examined together, and one part construed by another, with a view to give effect and operation to the whole, if it can be done. Chesapeake & O. Canal Co. v. Baltimore & O. R. Co., 4 Gill & J. 4. It is laid down in some of the books, that, in construing a statute, the title (being no part of it) is not to be regarded; but we have high authority in this country for a different rule of construction. The title, however, cannot control the express words of the enacting clause. Id. The preamble of a statute is a key to its construction. Id. Where a corporation was created to effect a particular object, as to make a river navigable, which was not so before, and no other mode of accomplishing that result was pointed out in the charter, it will be intended that the legislature designed that the river was to be made navigable in any of the known modes in which the navigation of the river may be improved. Id. Every law which is to wrest from an individual his property, without his consent, must be strictly construed. Id. 5. All statutes in pari materia are construed as one law. Id. Statutes should be construed with a view to the original intent and meaning of the makers, and such construction should be put upon them as best to answer that intention; which may be collected from the cause or necessity of making the statute, or from foreign circumstances; and when discovered, ought to be followed, though such construction may seem to be contrary to the letter of the statute. Id. 6. If laws and statutes seem contrary to one another, yet, if by interpretation they may stand together, they shall stand; and, when two laws only so far disagree or differ as that by any other construction they may both stand together, the rule that subsequent laws abrogate prior and contrarient laws, does not apply, and the last law is no repeal of the former. Id. Repeals of statutes by implication are things disfavored by law, and never allowed of but when the inconsistency and repugnancy are plain and unavoidable. Id. When it is manifestly the intention of the legislature, that a subsequent act shall not control the provisions of a former act, the subsequent act shall not have such operation, even though the words of it, taken strictly and grammatically, would repeal the former act. Id. A statute granting chancery powers to relieve against all penalties and forfeitures in actions at common law, it seems may be allowed, if such is its general language, to operate upon penalties and forfeitures already incurred at the time of its enactment; without violating the principle that vested rights are not to be disturbed; the party injured having still the right to recover all which in equity and good conscience is due to him. Potter v. Sturdivant. 4 Greenl. 154. Upon every sound principle of construction, a reference to a term used in a statute, must be in its direct and primary sense, as expressly defined, and not in an assimilated interpretation. And this rule is more especially applicable when the express meaning will accomplish all that was designed by the framers of the law. Per

Strong, P. J., Cruger v. Cruger, 5 Barb. 225. The sixteenth section of the act of congress, passed on the 18th of February, 1793, entitled "An act for enrolling and licensing ships or vessels to be employed in the coasting trade and fisheries, and for regulating the same" (1 Stat. 305), prescribes the manner in which foreign merchandise shall be specified in the manifest of a vessel going coastwise, and imposes a pecuniary penalty upon the master for failing to comply with it; but does not forfeit the goods. U. S. v. Carr, 8 How. [49 U. S.] 1.